**FIRE INSURANCE EXCHANGE,**
Appellant

v.

**Clifton SULLIVAN and Diane**
**Sullivan, Appellees.**

No. 14–04–00081–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 7, 2006.

Jeffrey Lee Hoffman, Richmond, Levon Hovnatanian and Bruce E. Ramage, Houston, for appellants.

Savannah Lina Robinson, Danbury, and Helen A. Cassidy, Houston, for appellees.

Panel consists of Justices EDELMAN, SEYMORE and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

An insurer under a homeowner's policy appeals from a money judgment in favor of the insureds based on their claims for breach of contract, violations of the Deceptive Trade Practices Act and former article 21.55 of the Texas Insurance Code.[1] We conclude that, after properly applying the jury's findings, the amount that the insurer tendered to the insureds before suit exceeds the amount to which the insureds are entitled under the jury's verdict. Accordingly, we reverse the trial court's judgment and render judgment that the insureds take nothing against the insurer.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Fire Insurance Exchange ("FIE") insured the home of Clifton and Diane Sullivan[2] under a standard Texas Homeowner's Policy, Form B.[3] In late May or early June of 2001, a pipe in the attic of the Sullivans' home burst. Clifton Sullivan repaired the pipe and vacuumed the water out of the living room carpet. On July 2, Diane Sullivan reported the leak to her insurance agent, Dwight Moody, and also informed him of a second leak, located in the master bath shower.

After inspecting the home, FIE's adjuster, John Dunn, estimated repairs attribut-

---

**1.** See Act of May 27, 1991, 72d Leg. R.S., ch. 242, § 11.03, art. 21.55, 119 Tex. Gen. Laws 939, 1043–45 (repealed and recodified 2003) (current version at TEX. INS.CODE ANN. §§ 542.051–.061 (Vernon Supp.2005)).

**2.** In the record, Mrs. Sullivan is referred to both as "Diane" and "Diana." Because the Sullivans' pleadings refer to her as "Diane," we refer to her in that manner as well.

**3.** The parties do not dispute that the policy was in effect during the time period in question.

able to the attic leak would cost $2,944.75. He subtracted the Sullivans $880 deductible from this amount, resulting in a net payment of $2,064.75.[4] Concerned they may not be able to complete the repairs for that amount, Diane Sullivan contacted Moody, and he advised her to get a second estimate. The contractor she subsequently contacted estimated the repairs at $7,290. The Sullivans contend that they did not have the additional $5,000 for the repairs and therefore hired an attorney.

On July 31, 2001, the Sullivans' attorney sent a written claim to FIE for mold growth and water damage. In September 2001, claiming they did not receive a satisfactory response to their written claim, the Sullivans hired a contractor to investigate the damage and the following additional leaks were discovered: an air conditioner leak, a leak in the master shower, and one in the hall bath. The Sullivans reported those additional losses to FIE on September 4 and September 7. The contractor advised the Sullivans to leave the house because it was contaminated with mold, and they relocated to a motel on September 8, 2001.

On September 12, FIE assigned another claims adjuster, Richard Norwood, to handle the Sullivans' claims. Norwood initiated payment of additional living expenses ("ALE") for the Sullivans and requested additional testing on the residence. That testing was done on January 3, 2002. According to the test results, there was mold growth in virtually the entire house. Norwood's investigation of the claims concluded on March 6, 2002, and on April 3, FIE issued two checks to the Sullivans one for $66,734.02 and one for $15,696.55.[5]

Unsatisfied with these amounts, the Sullivans sued FIE alleging that the delay and mishandling of their claims had resulted in the deterioration of their home. They asserted claims for breach of contract, bad faith, violations of the Insurance Code and the Deceptive Trade Practices Act ("DTPA").[6] FIE responded with a general denial alleging that the damages to the home were excluded under various policy provisions, and that the Sullivans failed to protect the home and make necessary repairs.

The case was tried to a jury, which found that FIE breached the dwelling coverage portion of the policy, but not the personal property and additional living expenses coverage provisions. The jury awarded costs for mold remediation and repair of the home, as well as personal property damage. In its final judgment, the trial court accepted the verdict, stating as follows:

The Jury found the total amount to repair the dwelling and to repair or replace contents to be $98,565.11. The court finds that [FIE] tendered payment to Plaintiffs ... in the amount of $2,064.75 and tendered further payment to Plaintiffs ... in the amount of $82,430.57 entitling [FIE] to a credit totaling $84,495.32.

Taking such into account along with the $880 deductible set out in the policy of insurance, the Plaintiffs are entitled to recover damages on their breech [sic] of contract and DTPA claims from [FIE] in the amount of $13,189.79.

Plaintiffs are further entitled to recover penalty under Art. 21.55 in the

---

**4.** The master bath leak was not addressed at that time because, according to Dunn, Diane Sullivan did not want to pursue it.

**5.** The Sullivans declined to cash these checks; however, checks payable in the same amounts and payable to the Sullivans' attorneys were

later sent to the Sullivans' attorneys. These attorneys cashed both checks.

**6.** The Sullivans also sought a declaratory judgment against FIE.

amount of $31,450.67; Plaintiffs are further entitled to recover prejudgment interest of $1,798.28; plaintiffs are entitled to recover reasonable attorney fees in the amount of $39,426.04 for a total judgment in favor of Plaintiffs ... of $85,864.78.

## II. Issues Presented

FIE presents the following issues:

(1) Whether the trial court erred in including the personal-property costs in the judgment's total cost amount when the Sullivans failed to obtain findings (1) that FIE breached the personal-property coverage portion of the policy, and (2) that their loss was caused by a covered, named peril.

(2) Whether the trial court erred in including the full amount of the dwelling's remediation and repair costs in the judgment's total cost amount when the jury found that only forty-five percent of these costs were attributable to a covered peril.

(3) Whether penalty interest under former article 21.55 of the Texas Insurance Code accrues on payments made to the insured.

(4) Whether the Sullivans are entitled to attorney's fees.

(5) Whether the Sullivans' failure to comply with the policy's condition precedent that required them to prevent further damage to the property precludes their recovery under the policy.

(6) Whether the policy's mold exclusion precludes any recovery under the policy.

## III. Analysis

### A. Policy Provisions

Before addressing FIE's issues and arguments, we set out pertinent provisions of the policy and the jury's findings. As presented to the jury, the insurance policy provides three distinct areas of coverage: (1) to the dwelling; (2) for personal property; and (3) for additional living expenses. Under the policy, the dwelling is insured against "all risk of physical loss ... unless the loss is excluded in Section I Exclusions." The Sullivans' personal property, subject to the same exclusions, is insured against physical loss if caused only by named perils. The named peril pertinent to this case is "Accidental Discharge, Leakage or Overflow of Water or Steam from within a plumbing, heating or air conditioning system or household appliance." Following the accidental discharge or leakage provision is the "exclusionary repeal provision," stating "Exclusions 1.a. through 1.h. under Section I Exclusions do not apply to loss caused by this peril." Of these exclusions, 1.f. is the only one relevant to our discussion and provides:

> We do not cover loss caused by:
>
> (1) wear and tear, deterioration or loss caused by any quality in property that causes it to damage or destroy itself.
>
> (2) rust, rot, mold or other fungi.
>
> (3) dampness of atmosphere, extremes of temperature.
>
> (4) contamination.
>
> (5) rats, mice, termites, moths or other insects.
>
> We do cover ensuing loss caused by collapse of the building or any part of the building, water damage, or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

The last sentence in this provision is generally referred to as the "ensuing loss" provision.

FIE's liability for breach of the insurance policy was submitted to the jury in three separate questions, one pertaining to the dwelling portion of the policy (Question 1–A), one to the personal property portion (Question 1–B), and one concerning the additional living expenses portion (Question 1–C). The jury found FIE breached only the dwelling portion of the policy, answering "No" to Questions 1–B and 1–C. The instructions accompanying Question 1–A provided: [7]

> Payment is owed under the policy for all risks of physical loss to the house, unless otherwise excluded.
>
> The policy excludes coverage for loss caused by wear and tear, deterioration, any condition of the property that causes it to damage itself, dampness of atmosphere, extremes of temperature, rust, rot[,] mold or other fungi. However, these exclusions do not apply to loss caused by accidental discharge, overflow or leakage from within a plumbing, heating and air conditioning system or household appliance.
>
> The policy does provide coverage for ensuing loss caused by water damage if the loss would otherwise be covered under the policy.

## B. Did the trial court err in its calculations of the damages awarded for mold remediation?

■ There was no dispute in this case that the Sullivans' home had been dam-

aged.[8] Instead, the parties' focus at trial was the cause of the damage. In its defense, FIE sought to establish that the damages were due to roof leaks, a leak from an air conditioning overflow pan, and the Sullivans' failure to make repairs to the home. The Sullivans sought to prove that the pipe leak in the attic and the shower were the genesis of the home's damages and, because of FIE's mishandling of their claims, the home sustained the additional damages. To this end, both parties introduced evidence attributing the cause of the damages to particular perils. In its second issue, FIE contends the trial court erred in awarding the full amount of the mold-remediation costs found by the jury because the jury attributed only forty-five percent of these costs to a cause covered by the policy.[9]

In Question 2(a), the jury was asked what amount of money should be awarded, if any, for the cost of mold remediation to the home. The jury answered $22,302.81. Question 3A then inquired, "[w]hat percentage, if any, of the cost of remediation of the mold damage to the Sullivans' home that you have found in answer to Question 2(a) to have been a producing cause of damage to the Sullivans' home do you attribute to the following causes?" Five perils were listed and, in response, the jury inserted the following percentages: 1) ten percent to "Deterioration of the roof"; 2) forty-five percent to "Dampness of atmo-

---

7. Because the jury found FIE breached only the dwelling portion of the policy, we limit our discussion to Question 1–A.

8. FIE's counsel stated during opening argument that there was no dispute the house had become uninhabitable and no dispute it was reasonable for the Sullivans to have left the home.

9. FIE's argument in the trial court under this issue differed slightly. On appeal, FIE asserts

that both Questions 2(a) and 2(b), damages for the cost to remediate and repair the home, respectively, must be reduced by fifty-five percent, but in the trial court it requested that only Question 2(a) be reduced by the jury's findings. Because Question 3A is limited solely to the jury's finding in Question 2(a) and FIE did not request that Question 2(b) be reduced in the trial court, we limit our discussion of FIE's issue to Question 2(a).

sphere, extremes of temperature"; and 3) forty-five percent to accidental leakage or discharge.

■ The trial court's judgment must conform to the pleadings, the nature of the evidence, and the jury's verdict. *See* Tex.R. Civ. P. 301. A trial court may not enter a judgment notwithstanding the verdict or disregard jury's findings that are supported by the evidence, except upon motion and notice. *Id.* Here, although the jury attributed fifty-five percent of the cause of the mold damage to excluded perils, the trial court awarded the Sullivans the full amount of damages awarded in the corresponding question, 2(a), apparently disregarding the jury's finding in Question 3A. The Sullivans did not file a motion requesting the trial court to disregard that finding.

■ If a trial court *sua sponte* disregards a finding, the court's action may be upheld only where the disregarded finding is immaterial. *Harris County v. Gibbons*, 150 S.W.3d 877, 885 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *see Second Injury Fund of Tex. v. Garcia*, 970 S.W.2d 706, 710 (Tex.App.-Amarillo 1998, pet. denied); *McDaniel v. Cont'l Apartments, Joint Venture*, 887 S.W.2d 167, 170 (Tex. App.-Dallas 1994, writ denied). Similarly, only when an issue is material must the judgment conform to the jury's finding. *Brown v. Armstrong*, 713 S.W.2d 725, 728 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.). A question is immaterial when it should not have been submitted or, though properly submitted, it is rendered immaterial by other findings. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex.1994).

■ On appeal, the Sullivans contend the trial court properly disregarded Question 3A because it is immaterial in light of the jury's answer to Question 1–A, asserting the excluded perils were covered under the policy by virtue of the ensuing loss provision or the exclusion repeal provision. But, the jury expressly attributed only forty-five percent of the cause of the mold damage to accidental discharge in Question 3A. Moreover, although ensuing loss was referenced to in the breach question, the jury was not asked to allocate any percentage of the mold damage to an ensuing loss. Because the ensuing loss provision is an exception to an exclusion, it was up to the Sullivans to request that element be included in the causation question.[10] *See Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 193 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (stating it is the insured's burden to demonstrate coverage under an exception to an exclusion); *cf. Walker v. Fed. Kemper Life Assurance Co.*, 828 S.W.2d 442, 454 (Tex.App.-San Antonio 1992, writ denied) (noting insured appellant failed to request a necessary causation element). We cannot conclude, as suggested by the Sullivans' argument, that by simply finding a breach, causation findings are then rendered immaterial. The Sullivans had the burden to prove their damages were attributable to a covered cause.

■ Nor can we conclude that Question 3A should not have been submitted or was otherwise immaterial. As we noted, the main focus of the dispute between the parties was the cause of the damages to the home and thus, the causation question was a controlling issue. FIE sought to establish that at least some of the mold damages were due to excluded perils and presented evidence in support of its contentions. The trial court must submit a jury question raised by the evidence and pleadings. *Harris County v. Smith*, 96

10. This is not to say that we agree that the mold damage was covered as an ensuing loss.

S.W.3d 230, 236 (Tex.2002); *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 223 (Tex.1988).

The trial court's judgment should have conformed to the jury's findings, including those in Question 3A. The trial court erred by awarding all of the damages found by the jury in Question 2(a), because in Question 3A not all of those damages were found to be caused by covered perils. In accordance with the jury's causation findings in answer to Question 3A, we hold that the trial court should have reduced the Sullivans' potential recovery based on the jury's answer to question 2(a) to $10,036.26 (45% of $22,302.81). To this extent, we sustain FIE's second issue.

### C. Did the trial court err by including costs to replace or repair the Sullivans' personal property?

■ In its first issue, FIE argues that the trial court also erred in its damage award to the Sullivans by including the cost to clean or replace the Sullivans' personal property because the jury failed to find that FIE had breached that portion of the policy and failed to attribute any of those costs to a covered peril. Question 1–B, the liability question and instructions regarding the personal property portion of the policy, stated the following:

> Did [FIE] breach the personal property coverage portion of the policy of insurance?

> A "breach of contract" to the personal property portion of the policy occurs if:

> 1) Payment that is owed under the contract is not made; or

> 2) Services owed under the contract are not provided; or

3) Deadlines set by the contract are not met.

Payment is owed under the policy for physical loss to the personal property caused by the following perils, unless otherwise excluded.

A. Windstorm

B. [A]ccidental discharge, overflow or leakage from within a plumbing, heating and air conditioning system or household appliance.

Loss caused by windstorm to personal property within a building is not covered unless direct force of wind makes an opening in a roof or wall and rain enters through this opening and causes the damage.

The policy excludes coverage for loss caused by wear and tear, deterioration, any condition of the property that causes it to damage itself, dampness of atmosphere, extremes of temperature, rust, rot mold or other fungi. However, these exclusions do not apply to loss caused by accidental discharge, overflow or leakage from within a plumbing, heating and air conditioning system or household appliance.

The policy does provide coverage for ensuing loss caused by water damage if the loss would otherwise be covered under the policy.

To this question, the jury answered "no."

The only damage question submitted to the jury for all of the Sullivans' claims was Question 2.[11] That question was expressly predicated on an affirmative response to Questions 1–A, 1–B, or 1–C. Question 2(c) asked what sum of money would compensate the Sullivans for "[t]he reasonable and necessary cost to replace or clean the contents of the home?" The jury answered

---

**11.** In another question, the jury was asked what sum of money would compensate Diane Sullivan for mental anguish damages, but the jury did not answer that question having failed to find that FIE's conduct was committed knowingly.

$23,696.55. Following that, in Question 3B, the jury attributed ten percent of the cost to clean and repair the Sullivans' personal property to "Deterioration of the roof," attributed ninety percent to "Dampness of atmosphere, extremes of temperature," but did not attribute any percent of the cost to accidental leakage or discharge. In the trial court, FIE requested the trial court to disregard the jury's answer to Question 2(c), claiming it was rendered immaterial by the jury's answers to Questions 1–B and 3B. On appeal, FIE reasserts this argument, and contends the trial court erred in not deducting $23,696.55 from the amount of the Sullivan's potential recovery. In response to FIE's argument, the Sullivans argue that there is one contract, the jury found it was breached, the trial court properly disregarded the jury's answer to Question 1–B because it was immaterial,[12] and that submitting the breach question in three parts was contrary to Rule of Civil Procedure 277.[13]

As we have stated, a question is immaterial when it should not have been submitted, or when it was properly submitted but has been rendered immaterial by other findings. *Spencer*, 876 S.W.2d at 157. Important to this issue, without a corresponding liability finding, a finding of damages becomes immaterial. *See Mitchell v. Bank of Am., N.A.*, 156 S.W.3d 622, 627 (Tex.App.-Dallas 2004, pet. denied) ("It is well established in Texas that no recovery is allowed unless liability has been established. In the absence of liability, the question of damages becomes immaterial"); *Turner v. Lone Star Indus., Inc.*, 733 S.W.2d 242, 246 (Tex.App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.).

■ The insurance policy in this case is an all-risk policy as to the dwelling. However, the personal property coverage is limited to damages caused by specifically named perils, and there are a limited number of exclusions that apply to the named perils. Therefore, FIE's actions could have been a breach of the dwelling portion of the policy without constituting a breach of the personal property portion. Thus, each breach question pertained to different elements of the alleged breach and was properly submitted. *See Fleet v. Fleet*, 711 S.W.2d 1, 2 (Tex.1986); *see also Harris County*, 96 S.W.3d at 236 ("Whether a granulated or broad-form charge is submitted, the trial court's duty is to submit only those questions, instructions, and definitions raised by the pleadings and the evidence.").

In Question 1–B, the jury found FIE had not breached the personal property portion of the policy; thus, the jury failed to find FIE was liable under that portion of the policy. Further, in the corresponding causation question, Question 3B, the jury attributed all of the Sullivans' personal property damages to excluded perils. The Sullivans had the burden to prove that the damages to their personal property were due to the perils named in the policy, or as an exception to the policy's exclusions, as stated in the charge. In the jury's answers to Questions 1–B and 3B, the jury found that the Sullivans failed to meet this burden of proof. Without a finding of a breach of that portion of the policy, the jury's finding of damages on that issue became immaterial and should have been disregarded by the trial court. *See Mitchell*, 156 S.W.3d at 627; *see also Pigg v. Int'l Hosps., Inc.*, 421 S.W.2d 169, 172–73 (Tex.Civ.App.-Dallas 1967, writ

---

12. As noted, the Sullivans did not file a motion to disregard the jury's answers.

13. "In all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions." TEX.R. CIV. P. 277.

ref'd n.r.e.) (noting under Rule 301, an immaterial issue may be disregarded even if supported by evidence).

 The Sullivans also argue that Question 1–B was rendered immaterial because of the jury's answers to Questions 5 and 6. There, the jury found that FIE breached former article 21.55 and the DTPA, respectively. According to the Sullivans, because these statutes provide that all sums owed under the contract may be awarded as damages, the trial court did not err in awarding all costs to remediate the Sullivans' personal property. But, liability under former article 21.55 of the Insurance Code and the DTPA—as alleged by the Sullivans and found by the jury here—is contingent on a finding of coverage. *See Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) ("There can be no liability under [former] article 21.55 if the insurance claim is not covered by the policy"); *Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex.2001); *see also* TEX. INS.CODE ANN. art. 21.55, § 6 (Vernon Supp.2004) (stating damages were to be awarded when the insurer is liable "pursuant to a policy of insurance"). Because the jury failed to find that FIE breached the personal property portion of the insurance policy, and failed to attribute any cause of the damage to a covered peril, the Sullivans cannot be entitled to the personal property damages under former article 21.55 of the Insurance Code. *See Progressive County Mut.*, 177 S.W.3d at 922.

Likewise, the jury's affirmative findings on the Sullivans' DTPA claims were all rooted in FIE's handling of the Sullivans' claims. The jury did not find that FIE had misrepresented a material fact or policy provision relating to coverage, and failed to find that FIE represented that work or services had been performed when in fact, they had not. And, in Question 9 the jury was asked if FIE failed to comply with its duty of good faith and fair dealing, and the jury answered, "No." *See Vail v. Tex. Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 135 (Tex.1988) (stating in order to establish statutory violations under the DTPA and article 21.21 of the Insurance Code, the same elements necessary to establish the insurer's common law duty of good faith and fair dealing need to be proven); *see also* TEX. BUS. & COM.CODE ANN. §§ 17.46, 17.50 (Vernon 2002) (listing, respectively, deceptive acts and consumer's remedies). Therefore, recovery for the damages to the Sullivans' personal property, based on the mishandling of their claims, could not be premised on the jury's findings in Question 6.

Therefore, in accordance with the jury's findings in answer to Questions 1–B and 3B, we hold that the trial court should not have included in the Sullivans' potential recovery the $23,696.55 found by the jury in answer to question 2(c). Accordingly, we sustain FIE's first issue. In sum, under the jury's findings, the total amount of the Sullivan's potential recovery and the amount of coverage owed under the policy is $61,722.01 (which is $10,036.26 plus $52,-565.75—the damages found by the jury in answer to Question 2(b)—minus the $880 deductible). This amount is less than the $84,495.32 that FIE tendered to the Sullivans before they filed suit. Therefore, the trial court erred in not rendering a take-nothing judgment as to the Sullivans' breach-of-contract and DTPA claims.[14]

14. The Sullivans assert that FIE tendered the $15,696.55 unconditionally regarding the personal-property coverage of their policy and that, if there is no such coverage, then FIE should not be given credit for this overpayment as to the personal-liability coverage. The Sullivans assert FIE never pleaded for reimbursement and therefore cannot obtain

## D. Did the Trial Court Err in its Penalty Interest Damages Calculations?

■ In its third issue, FIE argues that the trial court erred in its penalty interest damage calculations under former article 21.55 of the Insurance Code because the court included interest on the entire amount of the claim without deducting any amount of money previously paid.

Relative to this case, former article 21.55 provided:

> In all cases where a claim is made pursuant to a policy of insurance and the insurer liable therefor is not in compliance with the requirements of this article, such insurer shall be liable to pay the holder of the policy, or the beneficiary making a claim under the policy, in addition to the amount of the claim, 18 percent per annum of the amount of such claim as damages, together with reasonable attorney fees. If suit is filed, such attorney fees shall be taxed as part of the costs in the case.

TEX. INS.CODE ANN. art. 21.55, § 6 (Vernon Supp.2004). In *Republic Underwriters Insurance Co. v. Mex–Tex, Inc.*, 150 S.W.3d 423, 427–28 (Tex.2004), the supreme court examined calculation of former article 21.55 penalty interest damages and concluded that the amount of the "claim" for purposes of that statute is the amount ultimately determined to be owed to the claimant, less any partial payments made. Thus, an insured is entitled to the penalty interest on the difference between the amount the insurer unconditionally tendered and the amount of the claim as determined to be owed. *Id.*

In this case, the trial court awarded penalty interest damages to the Sullivans based on the full amount of damages found by the jury, without any deduction for the unconditional payments made by FIE. As FIE contends, this is error; therefore, we sustain FIE's third issue in this regard. The amount of coverage owed under the policy, based on the jury's findings, was $61,722.01. Under *Mex–Tex*, the trial court should have stopped calculating penalty interest on April 3, 2002, the day that the amount tendered by FIE exceeded the amount of coverage. *See Mex–Tex, Inc.*, 150 S.W.3d at 427–28. The Sullivans requested penalty interest starting from January 27, 2002. Eighteen percent per year interest on $61,722.01 from January 27, 2002 to April 3, 2002 is $2,008.92. Therefore, the Sullivans potential recovery under former article 21.55 was no more than $2,008.92.

## E. Were the Sullivans entitled to recover attorneys' fees?

■ In its fourth issue, FIE asserts that the Sullivans were not entitled to recover attorney's fees under the DTPA and Chapter 38 of the Civil Practice and Remedies Code because, under the jury's findings, they should have taken nothing on those claims, so that they were not prevailing parties. We agree. As to those claims, the amount that FIE tendered the Sullivans before suit exceeded the amount they were entitled to under the jury's findings. This is not an offset for a different claim. Because the Sullivans should have recovered no actual damages under their DTPA and contract claims, they cannot recover attorney's fees as to these claims. *See Allstate Ins. Co. v. Bonner*, 51 S.W.3d

such a credit. In its motion for JNOV, FIE did assert that the Sullivans should take nothing based on the proper application of the jury's findings and the amounts already paid by FIE under the policy. We disagree with the Sullivans' argument. Nonetheless, even if FIE were entitled to a credit of only $68,798.77, this amount still means that the Sullivans take nothing on their claims.

289, 291–92 (Tex.2001) (stating that where amount found by jury has already been paid by defendant, party has not prevailed as to claim); *Buccaneer Homes of Alabama, Inc. v. Pelis*, 43 S.W.3d 586, 591 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (holding party is not entitled to attorney's fees under DTPA if all of their damages were paid before trial); *Blizzard v. Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 806–07 (Tex.App.-Dallas 1988, no writ) (same as *Buccaneer* as to Chapter 38).

 FIE also asserts the parties stipulated that, if the Sullivans are entitled to recover attorney's fees, then their attorney's fees would be forty percent of the amount of the actual damages they recover. The record reflects the following stipulation in open court between FIE and the Sullivans:

[counsel for FIE]: [FIE] stipulates that in the event the jury enters findings on liability issues that would entitle [the Sullivans] to an award of attorney's fees, [the Sullivans] will be entitled to receive a judgment for attorney's fees of forty percent of the—of whatever the damage figure is that is entered in the judgment for that statutory attorney [sic] fee issue . . .

[trial court]: And this is assuming that the appropriate answers are made to issues submitted that would open the door for DTPA.

[counsel for FIE]: Sure, for liability. If there is a liability finding, absolutely.

[counsel for the Sullivans]: I accept the stipulation. I think it's fine.

[trial court]: I'll approve the stipulation. I believe that it is appropriate.

. . .

[counsel for Sullivans]: Well, my only concern is that—we asked the court reporter to type it up, and the Court's

question modifies the stipulation. The stipulation was made by [counsel for FIE] that they would agree to forty percent of whatever the damage figure is and then the Court said assuming the appropriate answers are made to issues submitted that would open the door to DTPA. We also have attorney's fees in connection with breach of contract and in connection with breach of the insurance code. And to—what I'd like to clarify is the Court's question should not be made to limit the stipulation.

[trial court]: And it was not intended to. That was probably a misspoken statement on my part. It probably would be more appropriate that if the appropriate responses are made across the board that would open it up for attorney's fees. Is that your understanding, [name of counsel for FIE]?

[counsel for FIE]: Yes, Your Honor, to the extent that there are jury findings that would on liability issues open the door for statutory attorney's fees and—yeah. That—it's not limited to DTPA, for example, 21.21.

[counsel for Sullivans]: The Texas Civil Remedies & Practice Code [sic]— what is it—38.001 also provides attorney's fees for contract cases, and the Texas Supreme Court has recently held that that does apply to insurance disputes. So, I understand your term statutory liability to include attorney's fees under 38—or 38.001.

[counsel for FIE]: Only to the extent that counsel establishes her entitlement under that statute and under that provision. My understanding is that it requires a notice letter and demand for attorney's fees; but assuming that she establishes the prerequisites, yes.

[trial court]: My statement was in no way intended to be a limitation. To put it globally, I understand that defense counsel is saying that if the requisite steps have been taken and they are satisfied, you would then become entitled to attorney's fees across the board in any situation if the requisite statutory steps are taken.

[counsel for FIE]: Correct.

[counsel for Sullivans]: I don't have any problem with that.

FIE asserts that, under this stipulation, the Sullivans' potential recovery for attorney's fees under former article 21.55 is limited to forty percent of the amount of penalty interest damages that the Sullivans are entitled to recover. We agree. The record reflects that, to avoid the necessity of presenting evidence regarding the reasonableness of the attorney's fee requested by the Sullivans, the parties stipulated that, if the Sullivans were otherwise entitled to recover attorney's fees under a statute, then the reasonable fee would be forty percent of the actual damages recovered by the Sullivans under that statute. Based on this stipulation, the Sullivans' potential recovery of attorney's fees under former article 21.55 was no more than $803.57, which is forty percent of $2,008.92.

The Sullivans argue that the parties stipulated the Sullivans would recover forty percent of the damages found by the jury, without deducting the amount already paid by FIE and without giving effect to the jury's other findings, regardless of whether the Sullivans recovered actual damages or would otherwise have been entitled to recover attorney's fees. This argument lacks merit because it conflicts with the parties' description of the stipulation in open court. The parties stip-

ulated in open court that the Sullivans would only recover attorney's fees if they were otherwise entitled to do so, but that the Sullivans need not prove reasonableness because the parties agreed that forty percent of the amount recovered by them in the judgment would be a reasonable attorney's fee. Under the Sullivans' interpretation of the stipulation, the Sullivans would be entitled to recover more than $39,000 in attorney's fees, even if they recovered no damages under their breach-of-contract and DTPA claims and only $2,008.92 under former article 21.55. This is not a reasonable interpretation of the parties' language in describing their stipulation. We conclude that the Sullivans cannot recover attorney's fees based on their breach-of-contract and DTPA claims and that the Sullivans' potential recovery of attorney's fees under former article 21.55 was no more than $803.57. Accordingly, we sustain FIE's fourth issue to this extent.[15]

### III. CONCLUSION

In light of the jury's causation findings in answer to Question 3A, the trial court should have reduced the Sullivans' potential recovery based on the jury's answer to question 2(a) to $10,036.26. Because of the jury's findings in answer to Questions 1–B and 3B, the trial court should have not have included in the Sullivans' potential recovery the $23,696.55 found by the jury in answer to question 2(c). Calculating penalty interest damages under former article 21.55 in accordance with the *Mex–Tex* case, the Sullivans' potential recovery for penalty interest damages was no more than $2,008.92. Because FIE paid the Sullivans more than they were entitled to recover on their breach-of-contract and DTPA claims, the Sullivans cannot recover attorney's fees under the DTPA or Chap-

---

**15.** We need not address FIE's argument un-

der its fourth issue regarding presentment.

ter 38 of the Civil Practice and Remedies Code. Based on the parties' stipulation at trial, the Sullivans are entitled to recover no more than $803.57 in attorney's fees under former article 21.55. Therefore, applying the jury's findings of fact, the total potential liability of FIE to the Sullivans was $64,534.50. Presuming, without deciding, that there is no merit in FIE's arguments regarding an alleged condition precedent and an alleged total exclusion of mold damage, the Sullivans were not entitled to recover a judgment against FIE because FIE had already paid the Sullivans more than $64,534.50.[16] Accordingly, we reverse the trial court's judgment and render judgment that the Sullivans take nothing on their claims against FIE.

---

**16.** We need not and do not reach FIE's fifth and sixth issues.