Opinion issued April 7, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00334-CV

———————————

Left Gate Property Holdings, Inc. D/B/A Northside Texas Direct Auto
and Ed Williams,
Appellants

V.

Temeasha
Scott, Appellee



 



 

On Appeal from the Harris County Civil Court at Law Number
Two 

Harris County, Texas



Trial Court Case No. 890,770

 



 

MEMORANDUM OPINION

          Appellants,
Left Gate Property Holdings, Inc., doing business as Northside Texas Direct
Auto (“Texas Direct”), and Ed Williams, challenge the trial court’s judgment
entered, after a jury trial, in favor of appellee, Temeasha Scott, in her suit
against appellants for breach of contract and violation of the Deceptive Trade
Practices Act (“DTPA”).[1]  In the first five of their six issues,
appellants contend that there is no evidence of a breach of contract by Texas
Direct, there is no evidence of a deceptive act by Texas Direct or Williams,
and the evidence is “factually insufficient to support the conclusion that Scott
was harmed by or as a result of any activity” of Texas Direct or Williams.  In their sixth issue, appellants contend that
the trial court erred in awarding Scott attorney’s fees.

          We
affirm.

Background

Williams testified that in 2005, he,
while working as a salesman for Texas Direct, “listed” a 2005 Pontiac Firebird
for sale on eBay.  He prepared the
advertisement, “generated it,” and uploaded the information onto eBay’s website
by “manually” entering it through “a wizard,” selecting various options to
describe the car.  Williams explained
that a buyer can “end” an eBay auction by (1) bidding and having submitted the
highest bid at the end of the auction or (2) using the eBay “Buy it Now”
feature and paying a set price immediately. 
He noted that eBay allows a seller “to edit the information” originally
posted “until someone makes a bid on it”; however, once a bid is placed or the
“Buy it Now” option is exercised, the advertisement cannot be changed.  Williams explained that eBay has this “safeguard”
in effect because “once an auction has closed . . . it would be in eBay’s best
interest to lock down that record and not let anyone edit it.”  

Williams asserted that his eBay listing
contained a link to a “CARFAX” report to allow consumers to “get a reasonable
history” of the car.  The CARFAX report
listed the Firebird as having a “3.8-liter,” “V6” engine.  The trial court admitted into evidence a copy
of the eBay advertisement and the CARFAX report, both revealing an “April 30,
2007” timestamp, which, according to Williams, was the date that he had printed
the documents from his computer.  He
explained that there were “no physical document[s]” created at the time that he
listed the Firebird on eBay because the process “was all electronic,” but the
copy of the eBay advertisement in evidence was of the “original” as it had appeared
electronically.  However, the copy of the
CARFAX report in evidence was not how Scott would have seen the report in 2005
because it had since been updated to indicate her ownership of the car.  Williams noted that CARFAX is a reporting
service that obtains information about cars from government records.  He explained that there is “no way to go back
and change the old information on [a] CARFAX” report, and, had Scott “clicked
[on] and received the CARFAX,” she would have seen the report as admitted into
evidence without “the new information” about her ownership of the car.  The eBay advertisement admitted into evidence
contains only five of the twenty-five pages noted at the top of the document
because, as Williams explained, when he requested the copy from eBay, the eBay
“representative” who retrieved the copy from its archives told him that eBay
only stored the text and not the photographs contained in the advertisement.  Williams asserted that the absence of the
photographs “made up for” the missing pages. 


Williams further testified that he
did not “advertise[] the vehicle as a V8 to sell to the public or anyone” and
the car “was always registered as a V6.” 
Scott chose the “Buy it Now” option on eBay and, after she had purchased
the car, she and Williams exchanged a series of emails, from which Williams
learned that Scott was in Iraq at the time of her purchase and would not be
returning to the United States until September 23, 2005.  He noted that the emails did not reference
the car’s engine.  Williams sent the
documents concerning the car and Scott’s purchase of it to her address in
Kentucky because he knew that she would be returning there soon and, “typically,”
soldiers “have someone at their address” who has a power of attorney and can
sign their legal documents.  

Williams, in order to transfer
title of the car to Scott, signed, on behalf of Texas Direct, an “application
to transfer title” to a Kentucky title in Scott’s name.  The application listed the car as having an
“eight cylinder” engine.  Although
Williams, in his answers to interrogatories, stated that no one at Texas Direct
had placed this information on the application, he, at trial, testified that he
was “fairly confident” that he did not place the information on the application.  He noted that the writing does not “look like
[his] handwriting,” but he was “not sure” because there is “no way of knowing”
after his having sold “1500 cars” since the time he had sold the Firebird.  

          Scott
testified that when she was on active duty in the U.S. Army in Iraq in 2005,
she became interested in purchasing the 2002 Pontiac Firebird listed in the
Texas Direct online eBay advertisement. 
She explained that when she searched for a Firebird online, using eBay’s
various field options, she specifically selected the year, make, and model for
a 2002 Pontiac Firebird.  In regard to
Scott’s search, eBay provided fields for her to select an “engine type” and the
“number of cylinders.”  She “picked the eight-cylinder”
option, at which point eBay generated “a big list of V8 Firebirds and different
locations.”  From this list, Scott then
selected the 2002 Pontiac Firebird listed on eBay by Texas Direct, which, in
its listing, included a small photograph and stated that the car was a “V8,
fully loaded.”  After clicking on the
photograph of the car, Texas Direct’s listing “popped up” on her computer
screen.  The listing contained “the VIN
number, and it said that it was a V8, 2002 Firebird, white with dark grey
leather interior.”  However, Scott later
learned that the car actually had a black leather interior and a six-cylinder
engine.  She “remembered seeing three
pictures” of the car in the advertisement, and she stated that the eBay
advertisement introduced into evidence is not “the eBay ad that appeared on her
computer in Iraq back in August of 2005.” 
Scott also noted that she had informed Texas Direct that no one had her
power of attorney, no one had her authority to sign documents “on [her]
behalf,” she did not sign the “As Is” documents sent by Texas Direct to her
house in Kentucky, and her aunt actually signed the documents.[2]  Scott, however, did sign the “application for
the Kentucky title,” but she did not “fill in eight cylinders or any of the
information describing the vehicle” on the application.  She explained that had she known that the car
had a “V6” engine she would not have bought it. 
She thought that she was “buying a V8 Firebird, 2002, from Mr.
Williams.”  Scott further noted that when
she looked at Texas Direct’s listing on eBay she “saw a V8 engine listed on
this vehicle.”  And none of the documents
signed by her aunt reflected that the car had a “V6 engine.”  

Joshua Astrologo, Scott’s mechanic,
testified that the Firebird actually had a six-cylinder engine.  Scott brought the car to Astrologo for a
“tune up,” consisting of a “basic oil change” and replacement of the “spark
plugs and wires.”  When Astrologo opened
the car’s hood, he discovered that it was a “V6” and he would not need the
eight spark plugs that Scott had given him to install.  When Astrologo told Scott that the car was a
“V6” and not a “V8,” she “became kind of irate and mad.”  

During trial, the parties
stipulated to the amount of attorney’s fees, and, after the jury rendered its
verdict, the trial court signed its final judgment awarding Scott $4,000 in
actual damages, interest, and $10,000 in attorney’s fees.  Neither party submitted a question to the
jury on the recovery of attorney’s fees.  

Legal and Factual Sufficiency

In their first, second, and fourth issues,
appellants argue that the trial court erred in denying their motion for
directed verdict and judgment notwithstanding the verdict because there is no
evidence of a breach of contract by Texas Direct or of a false, misleading, or
deceptive act or practice by either Texas Direct or Williams.  In their third and fifth issues, appellants
argue, alternatively, that they are entitled to a new trial because the
evidence is factually insufficient to support the conclusion that Scott was
harmed by or as a result of any activity on the part of Texas Direct.  

The jury found that Texas Direct had “fail[ed] to comply with
the [a]greement” and that the failure to comply was material.  In determining materiality, the trial court,
in its charge, instructed the jury that they could consider “(a) the extent to
which the injured party will be deprived of the benefit which she reasonably
expected; (b) the extent to which the injured party can be adequately compensated
for the part of that benefit of which [she] will be deprived; (c) the extent to
which the party failing to perform or to offer to perform will suffer
forfeiture; (d) the likelihood that the party failing to perform or to offer to
perform will cure [her] failure, taking into account the circumstances
including any reasonable assurances; (e) the extent to which the behavior of
the party failing to perform or to offer to perform comports with standards of
good faith and fair dealing.”

The jury also found that both Texas Direct and Williams had
engaged in false, misleading, or deceptive acts or practices that Scott relied
on to her detriment and the acts or practices were a producing cause of damages
to Scott.  See Tex. Bus. & Com.
Code Ann. § 17.46(a) (Vernon Supp. 2010).  In its charge, the trial court defined
“[f]alse, misleading, or deceptive act[s] or practice[s]” to mean
“[r]epresenting that goods or services had or would have characteristics that
they did not have,” “[r]epresenting that goods or services are or will be of a
particular quality if they were of another,” or “[r]epresenting that an
agreement confers or involves rights that it did not have or involve.”  See id. § 17.46(b)(5),(7),(12)
(Vernon Supp. 2010).

Standard of Review

We will sustain a legal sufficiency or “no evidence”
challenge if the record shows one of the following: (1) a complete absence of
evidence of a vital fact, (2) rules of law or evidence bar the court from
giving weight to the only evidence offered to prove a vital fact, (3) the
evidence offered to prove a vital fact is no more than a scintilla, or (4) the
evidence establishes conclusively the opposite of the vital fact.  City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005).
 “‘[W]hen the evidence offered to prove a
vital fact is so weak as to do no more than create a mere surmise or suspicion
of its existence, the evidence is no more than a scintilla and, in legal
effect, is no evidence.’”  Ford Motor
Co. v. Ridgway, 135
S.W.3d 598, 601 (Tex. 2004) (quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)).  “More than a scintilla
of evidence exists where the evidence supporting the finding, as a whole, rises
to a level that would enable reasonable and fair-minded people to differ in
their conclusions.”  Tarrant Reg’l
Water Dist. v. Gragg, 151
S.W.3d 546, 552 (Tex. 2004).  However, if the evidence at trial
would enable reasonable and fair-minded people to differ in their conclusions,
then jurors must be allowed to do so.  City of Keller, 168 S.W.3d at 822; see also King Ranch, Inc. v. Chapman,
118 S.W.3d 742, 751 (Tex. 2003).  In
conducting a legal-sufficiency review, a court must consider the evidence in
the light most favorable to the verdict and indulge every reasonable inference
that would support it, and “[a] reviewing court cannot substitute its judgment
for that of the trier-of-fact, so long as the evidence falls within this zone
of reasonable disagreement.”  City of
Keller, 168 S.W.3d at 822.  However, “[e]ven though the evidence is viewed
in the light most favorable to the verdict, it cannot be considered in isolated
bits and pieces divorced from its surroundings; it must be viewed in its proper
context with other evidence.”  AutoZone,
Inc. v. Reyes, 272
S.W.3d 588, 592 (Tex. 2008) (citing City of Keller, 168 S.W.3d at 827).

In a
factual-sufficiency review, we must examine both the evidence supporting and
contrary to the judgment.  See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242
(Tex. 2001);
Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).  The jury is the sole judge of the witnesses’
credibility, and it may choose to believe one witness over another; a reviewing
court may not impose its own opinion to the contrary.  See Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003). 
In our review of the factual sufficiency of the evidence, we must
consider and weigh all of the evidence, and we will set aside a verdict only if
the evidence is so weak or the finding is so against the great weight and
preponderance of the evidence that it is clearly wrong and unjust.  Pool v.
Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).    

Legal Sufficiency

In support of their legal-sufficiency challenge, appellants
assert there is no evidence that Texas Direct “had advertised the vehicle as
anything other than a six cylinder” and, although Scott’s testimony “might
[constitute] ‘some evidence’ when considered in isolation,” it was “rendered
‘no evidence’ when contrary evidence show[ed] it to be incompetent.”  They argue that the eBay advertisement, which
was admitted into evidence with a “V6 notation” constitutes “undisputed
evidence” that the jury could not disregard “because it shows that [Scott]
contracted to purchase a V6 automobile and that no one at Texas Direct had
failed to sell her a V6 vehicle.”  In
support of this argument, appellants assert that the “only evidence supporting
the judgment is [Scott’s] selective memory of what was contained in the ad” and
the “only contest [Scott] could muster against the actual ad is the date stamp
printed on it when the ad was retrieved from eBay.”  According to appellants, it is “uncontested”
that “once there [was] a bid, the eBay ad [could not have been] changed.”  They further assert that Scott herself
testified that “she had contracted to purchase a V6” and her own testimony
undermines her entire case that she was purchasing anything but a V6.    

We first note that although the record shows that Scott did at
one point testify that she “was buying a V6 Firebird,” she corrected this
testimony and further testified that she thought she was buying a “V8 Firebird,
2002, from Mr. Williams” and she had agreed to purchase a car with a “V8
engine.”  This single mistake in her
testimony does not undermine her case.  

Scott argues that there is “more than a scintilla of evidence”
to support the jury’s findings that Texas Direct had failed to comply with the
agreement and that Texas Direct and Williams had engaged in false, misleading,
and deceptive acts upon which Scott had relied to her detriment because her
testimony established “that she believed” the agreement was for her to purchase
a Firebird with an eight-cylinder engine, the eBay advertisement upon which she
relied listed the Firebird as having an eight-cylinder engine, and the
application to transfer title listed the Firebird as having an eight-cylinder
engine and she did not place this information on the application.  Scott argues that the eBay advertisement and
CARFAX report admitted into evidence do not constitute “conclusive evidence”
that Texas Direct advertised the vehicle as being equipped with a six-cylinder
engine because she testified that it was not the actual advertisement that she
saw, it is missing several pages, and it was not authenticated by an eBay
employee.  She also asserts that the
CARFAX report, dated in 2007, could not “possibly have been the actual report
made available to her at the time Scott was visiting the eBay ad in question.”   

As appellants note, “incompetent evidence is legally
insufficient to support a judgment,” and, thus, “evidence showing it to be
incompetent cannot be disregarded, even if the result is contrary to the
verdict.”  City of Keller, 168 S.W.3d at 812.  However, “jurors are the sole judges of the
credibility of witnesses and the weight to give their testimony.”  Id. at
819; Jackson, 116 S.W.3d at 761.  Therefore, when reviewing all of the evidence
in a light favorable to the verdict, courts “assume that jurors credited
testimony favorable to the verdict and disbelieved testimony contrary to
it.”  City
of Keller, 168 S.W.3d at 819.  

Here, Scott testified that she had accessed the advertisement
on eBay by making various selections, including engine type, to find a 2002
Pontiac Firebird with an eight-cylinder engine. 
She viewed the Texas Direct listing and saw the Firebird listed as a
“V8.”  Scott testified that the eBay
advertisement admitted into evidence was not the actual advertisement that she had
seen when she entered into the agreement to purchase the car.  Williams did testify that the eBay
advertisement in evidence is a copy of the actual advertisement that he had
listed on eBay and that the link to the CARFAX report showed that the Firebird
had a six-cylinder engine.  However, as
conceded by Williams, the full advertisement was no longer available at the
time he obtained it and twenty of the twenty-five pages were missing.  

 “[I]f the evidence
furnishes some reasonable basis for differing conclusions by reasonable minds
about a vital fact’s existence” more than a scintilla of evidence exists.  Rocor
Int’l, Inc. v. Nat’l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002).  Williams’s testimony about the eBay listing
and the CARFAX report does not constitute “undisputed evidence” that the jury
could not disregard.  In fact, Williams’s
testimony about the eBay listing and the CARFAX report was called into question
during cross-examination.  Moreover, the incomplete
copy of the eBay advertisement and Scott’s testimony that the eBay advertisement
described the Firebird as having a “V8” engine would have allowed reasonable
and fair minded people to differ in their conclusions.  See
Tarrant Reg’l Water Dist. v. Gregg, 151 S.W.3d 546, 552 (Tex. 2004).  Viewing the evidence in a light most favorable
to the verdict, we conclude that there is more than a scintilla of evidence
that the agreement was for the purchase of a 2002 Pontiac Firebird with an
eight-cylinder engine and that Texas Direct and Williams misrepresented that
the Firebird had an eight-cylinder engine. 
Accordingly, we hold that the evidence is legally sufficient to support
the jury’s findings of a material breach of contract and a violation of the
DTPA.

We overrule appellants’ first, second, and fourth issues. 

Factual Sufficiency

In their third and fifth issues, appellants assert that the
“evidence is factually insufficient to support the conclusion that [Scott] was
harmed by or as a result of any activity on the part of Texas Direct [or]
[Williams.]”  Although appellants, in their
issues presented, assert legal- and factual-sufficiency issues in regard to
both Texas Direct and Williams, they have failed to brief any
factual-sufficiency argument in regard to Texas Direct.  Therefore, Texas Direct has waived any
factual-sufficiency issues for our review. 
See Tex. R. App. P. 38.1(i). 
Accordingly, we overrule appellants’ third issue.

In support of his factual-sufficiency challenge, Williams asserts
that there is “no evidence that he had made any personal representations to [Scott]
or had mislead her regarding the vehicle,” “no evidence that he was a director
of Texas Direct,” and “no evidence of any causation . . . that anything [Williams]
did [] caused [Scott] any damages.”  He argues
that “there is factually-insufficient evidence to support the false, misleading
or deceptive act or practice element and the jury’s verdict against him is
contrary to the overwhelming weight of the evidence” because there is no
evidence of causation as required under the DTPA.  

Under the DTPA, a consumer may bring suit against any person
whose violation of the Act is a producing cause of the consumer’s harm.  Tex.
Bus. & Com. Code Ann. § 17.50(a)(1) (Vernon Supp. 2010).  An agent may be held personally liable for his
own violations of the DTPA.  Miller v. Keyser, 90 S.W.3d 712, 718
(Tex. 2002).  Liability is not affected
by the agent or employee’s position in the company, rather liability attaches
because the agent or employee himself made the misrepresentations.  Id.
at 717.  Producing cause requires “some
evidence that the defendant’s act or omission was a cause in fact of the
plaintiff’s injury.”  Helena Chem. Co. v. Wilkins, 47 S.W.3d
486, 502 (Tex. 2001).  

Scott testified that Texas Direct represented that the
Firebird had an eight-cylinder engine, the advertisement admitted into evidence
was not the advertisement that she viewed on the day of her purchase, the
transfer of title application described the car as having an eight-cylinder
engine, she did not place this information on the application, and she
purchased the Firebird because she believed it had an eight-cylinder
engine.  She further testified that when
she later took the Firebird to her mechanic for a “tune up,” he told her that
the Firebird had a six-cylinder engine, not an eight-cylinder engine.  

In contrast, Williams testified that the eBay advertisement admitted
into evidence showed that the car had a six-cylinder engine, it contained a
link to a CARFAX report, which also showed that the car had a six-cylinder
engine, and, it is a copy of the the same advertisement that he had posted
prior to Scott’s purchase on eBay.  He further
testified that once Scott clicked on “Buy it Now,” the advertisement could no
longer be altered.  However, as emphasized
by Scott, twenty pages of the eBay advertisement were not included in the
exhibit and Williams’s testimony was brought into question on
cross-examination.  

The
question of whether Williams’s actions constituted a violation of the DTPA that
were a producing cause of Scott’s damages required the jury to weigh the
conflicting evidence and evaluate the credibility of the witnesses.  Therefore, we must defer to the jury’s
resolution of this disputed issue.  See Jackson, 116 S.W.3d at
761.  We conclude that the evidence is factually sufficient
to support the jury’s finding that Williams’s false, misleading, or deceptive
practices were a producing cause of Scott’s damages.  Williams himself testified that he had
personally created the advertisement, and Scott testified that the
advertisement described the Firebird as having an eight-cylinder engine, she
contracted to purchase a car with an eight-cylinder engine, and, if the car had
been listed as having a six-cylinder engine, she would not have purchased
it.  The evidence in support of the
jury’s finding is not so weak as to make the verdict clearly wrong and manifestly unjust.  Pool, 715 S.W.2d at 655.  Accordingly, we hold that the evidence is factually
sufficient to support the jury’s finding that Williams engaged in false,
misleading, or deceptive practices by representing that the Firebird had
characteristics that it did not have and that it would be or a particular
quality when it was not.

          Accordingly, we overrule
appellants’ fifth issue.

Attorney’s Fees

In their sixth issue, appellants argue that the trial court erred in
awarding attorney’s fees to Scott because “the jury did not award any fees” and
she was not “legally entitled” to attorney’s fees.  They assert that although they entered into a
stipulation as to the amount of attorney’s fees incurred by Scott, they did not
stipulate that she was entitled to “the recovery of attorney’s fees.”  They further assert that “[t]he stipulation
predicated any recovery of attorney’s fees on an award by the jury” and “to
recover attorney’s fees, the parties would need to submit jury questions on the
necessity of attorney’s fees.”

          The trial court’s award of attorney’s
fees will not be disturbed on appeal absent an abuse of discretion.  Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998). 
Absent contrary
evidence, we must presume that a trial court’s judgment is valid.  Vickery v. Comm’n for Lawyer Discipline, 5 S.W.3d 241, 251 (Tex.
App.—Houston [14th Dist.] 1999, pet. denied). 
Here, attorney’s fees were recoverable under two Texas
statutes.  First, a party may recover
reasonable attorney’s fees on a claim regarding an oral or written contract.  Tex. Civ. Prac. & Rem. Code Ann. §
38.001(8) (Vernon 2008). 
Second, the DTPA provides that a “consumer who prevails shall be awarded
court costs and reasonable and necessary attorneys’ fees.”  Tex.
Bus. & Com. Code Ann. § 17.50(d). 
“Statutes providing that a party ‘may recover,’ ‘shall be awarded,’ or
‘is entitled to’ attorney fees are not discretionary.”  Bocquet,
972 S.W.2d at 20; see also Cont’l Dredging, Inc. v. De-Kaizered, Inc.,
120 S.W.3d 380, 396 (Tex. App.—Texarkana 2003, pet. denied) (stating that if
prevailing party recovers damages, attorney’s fees for a violation of the DTPA
are mandatory); Jackson Law Office, P.C.
v. Chappell, 37 S.W.3d 15, 23 (Tex. App.—Tyler 2000, pet. denied) (stating
that once jury determines that defendant has violated DTPA, only question that
remains is reasonableness and necessity of attorney’s fees, not whether
attorney’s fees should be awarded).

Here, because we have
concluded that the evidence is legally sufficient to
support the jury’s finding that Texas Direct breached its
written contract with Scott and that Texas Direct and Williams
violated the DTPA, we conclude that Scott, as the prevailing party, was
entitled to an award of reasonable attorney’s fees.  

The party seeking to
recover attorney’s fees carries the burden of proof to establish the amount
which is reasonable and necessary.  Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 11 (Tex. 1991).  The amount and
reasonableness of attorney’s fees are questions of fact to be determined by the
jury.  Morgan, 873 S.W.2d at 390. 
As a question of fact, the parties were free to stipulate to the amount
and reasonableness of attorney’s fees.  Id. 
A stipulation is an
agreement, admission, or other concession made in a judicial proceeding by the
parties or their counsel.  Hansen v.
Academy Corp., 961 S.W.2d
329, 335 (Tex. App.—Houston [1st Dist.] 1997, writ denied); Federal Lanes,
Inc. v. City of Houston,
905 S.W.2d 686, 689 (Tex. App.—Houston [1st Dist.] 1995, writ denied).  A stipulation constitutes a binding contract
between the parties and the court.  Federal
Lanes, 905 S.W.2d at
689.  In construing a stipulation, a
court must determine the intentions of the parties from the language used in
the entire agreement examining the surrounding circumstances, including the
state of the pleadings, the allegations made therein, and the attitude of the
parties with respect to the issue.  Discovery
Operating, Inc. v. Baskin,
855 S.W.2d 884, 886–87 (Tex. App.—El Paso 1993, no writ).  Stipulations are conclusive as to the facts
stipulated and to all matters necessarily included therein.  Handelman v. Handelman, 608 S.W.2d 298, 301 (Tex. Civ. App.—Houston
[14th Dist.] 1980, writ ref’d n.r.e.). 
Absent a stipulation, there must be evidence presented to support an
award of attorney’s fees.  Burtch v. Burtch, 972 S.W.2d 882, 890
(Tex. App.—Austin 1998, no pet.); see Arthur Andersen & Co. v. Perry Equip.
Corp., 945 S.W.2d
812, 818 (Tex. 1997) (stating that to recover attorney’s fees plaintiff must
prove that amount was reasonably incurred and necessary to prosecution of
case).

          Here, the record reflects the parties’
stipulation, as follows:

[Trial Court]:                 Defendant has tendered Exhibits
1 through 5.  Any objection?

 

[Plaintiff Counsel]:         No objection.

 

[Trial Court]:                 So admitted.  Let the record reflect that the parties have
agreed to stipulate to attorney’s fees. Each side will receive $10,000 if
awarded by the jury as appropriate and based —and legally entitled for,
$10,000 for trial and preparation; [$]7,500 into the court of appeals; an
additional $5,000 if it goes to the Supreme Court.  Is that your stipulation and agreement?

 

[Defense Counsel]:         It is, Your Honor.

 

[Plaintiff
Counsel]:         It is, Your Honor.

[Defense Counsel]:         So, we don’t need Defendant’s Exhibit 5
anymore?

 

[Trial Court]:                 So, Defendant’s Exhibit 5 is
withdrawn.

 

Appellants assert that although their stipulation covered the amount of
attorney’s fees, they did not stipulate to the reasonableness and necessity of
such fees or Scott’s right to recover them. 
Conversely, Scott asserts that “the stipulation was for the amount of attorney’s fees and the recovery of attorney’s fees would occur
‘as appropriate and based — and
legally entitled for.’”  Scott argues
that she “was entitled to attorney’s fees because she prevailed on a cause of
action for which attorney’s fees were recoverable and she recovered actual
damages.”  Moreover, because the jury was
not responsible for determining whether attorney’s fees should be recovered the
stipulation controls.  

The Fourteenth Court of Appeals has addressed
a similar issue.  See Fire Ins. Exch. v. Sullivan, 192 S.W.3d 99, 110 (Tex.
App.—Houston [14th Dist.] 2006, no pet.). 
In Sullivan, the parties
stipulated that “in the event the jury enters findings on liability issues that
would entitle [the plaintiffs] to an award of attorney’s fees, [the plaintiffs]
will be entitled to receive a judgment for attorney’s fees of forty percent of .
. . whatever the damage figure is that is entered in the judgment for that
statutory attorney [sic] fee issue.”  Id. 
The stipulation in Sullivan did
not mention the reasonableness or necessity of the attorney’s fees.  Id.  However, the court noted that to avoid the
necessity of presenting evidence as to the reasonableness and necessity of
attorney’s fees the parties had stipulated that, if they were legally entitled
to recover attorney’s fees, then the reasonable fee would be forty percent of
the actual damages recovered.  Id. 
Because the plaintiffs would only recover attorney’s fees if they were
otherwise entitled to do so, they “need not prove reasonableness because the
parties agreed that forty percent of the amount recovered by them in the
judgment would be a reasonable attorney’s fee.” 
Id. at 111.  Here, the stipulation was dictated into the
record by the trial judge.  Considering
the entire stipulation, it is apparent that the trial court and the parties
understood the stipulation to control the amount of the award of attorney’s
fees as the parties did not present any further evidence as to the amount of
their attorney’s fees, they did not object to the lack of a jury question, and
they stated on the record their agreement as to the amount of their attorney’s
fees.  

Appellants
now argue on appeal that Scott was required to submit an issue to the jury on
the recovery of attorney’s fees because the stipulation did not mention the reasonableness
and necessity of attorney’s fees.  Generally,
it is for the jury to determine the amount and reasonableness of attorney’s
fees.  Bocquet, 972 S.W.2d at 20; Chappell, 37
S.W.3d at 23 (stating
that once jury determines that defendant has violated
DTPA, question still remains as to reasonableness and necessity of attorney’s
fees); Morgan, 873 S.W.2d at 389.  Also, a failure to request a jury question on an
issue results in a waiver of that issue by the party relying on it unless the
issue was conclusively established.  See Tex.
R. Civ. P 279; Statewide Mobile
Homes, LLC v. Tesoro, Inc, No. 13-08-00313-CV, 2009 WL 2462871, at *2 (Tex.
App.—Corpus Christi Aug. 13, 2009, no pet.) (mem. op.); Abraxas Petroleum Corp. v. Hornburg, 20 S.W.3d 741, 763 (Tex.
App.—El Paso 2000, no pet.).  

However,
when facts are undisputed or conclusively established, there is no need to
submit those issues to the jury.  Sullivan v. Barnett, 471 S.W.2d 39, 44
(Tex. 1971); see XCO Prod. Co. v. Jamison,
194 S.W.3d 622, 633 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).  A stipulation serves as proof on an issue that
otherwise would be tried.  Houston Lighting & Power v. City of
Wharton, 101 S.W.3d 633, 641 (Tex. App.—Houston [1st Dist.] 2003, pet.
denied).  A stipulation is conclusive on
the issue addressed, and the parties are estopped from claiming the contrary.  Id.;
Columbia Gas Transmission Corp. v. New
Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996).  

Because
the stipulation here contemplated the amount of attorney’s fees to be
recovered, this issue was not in dispute and, therefore, was not required to be
submitted to the jury.  See Tex.
R. Civ. P 279; Abraxas Petroleum,
20 S.W.3d at 764; Tesoro, 2009 WL
2462871, at *2.  The stipulation
necessarily covered the reasonableness and necessity of the fees.  See Handelman, 608 S.W.2d at 301.  Neither party provided testimony as to the reasonableness
or necessity of their attorney’s fees, Texas Direct withdrew their exhibit
regarding attorney’s fees, and although a question on attorney’s fees was
originally presented in the proposed jury charge, the trial court did not include
it in the jury charge because the parties had agreed as to the amount of their attorney’s
fees on the record.  Because the parties
stipulated to the amount of attorney’s fees and Scott prevailed on her causes
of action entitling her to attorney’s fees, we hold that the trial court did
not abuse its discretion in awarding Scott $10,000 in attorney’s fees.  

Accordingly,
we overrule appellants’ sixth issue.  

Conclusion

          We
affirm the judgment of the trial court.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Alcala, and Sharp.











[1]           See
Tex. Bus. & Com. Code Ann. §
17.46(a) (Vernon Supp. 2010). 





[2]           The signing of the documents by
Scott’s aunt is not at issue.